UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| LACONNER ASSOCIATES LIMITED LIABILITY COMPANY,<br><br>              Plaintiff,<br><br>    v.<br><br>ISLAND TUG AND BARGE CO.,<br><br>             Defendant. | No. C07-175RSL<br><br>MEMORANDUM OF DECISION |

## I. INTRODUCTION

This maritime allision case was heard by the Court in a bench trial commencing on June 2, 2008 and concluding on June 3, 2008. Before trial, defendant Island Tug and Barge Co. admitted fault for the July 17, 2006 allision. See, e.g., Dkt. #33 at 6 ("Defendant Island Tug and Barge admits it breached the duty of reasonable care owed to plaintiff as the result of the July 17, 2006 incident."). Therefore, the trial addressed only damages. The Court has considered the evidence presented at trial, exhibits admitted into evidence, and the arguments of counsel. Being fully advised, the Court now makes the following Findings of Fact and Conclusions of Law:

## II. FINDINGS OF FACT

1. Plaintiff LaConner Associates Limited Liability Company is a Washington limited liability company with its principal place of business in La Conner, Washington. Plaintiff's

MEMORANDUM OF DECISION

managing member is Vaughn Jolley.

2. Defendant Island Tug and Barge Co. is a Washington corporation with offices in Seattle, Washington, and is the owner and operator of the tug ISLAND STORM.

3. At approximately 11 p.m. on Monday, July 17, 2006, the ISLAND STORM was pushing two barges north through the Swinomish Channel.  After passing under the Rainbow Bridge just south of the town of La Conner, the barges veered and hit a piling structure with an attached float.  The float was pushed by the force of the impact under plaintiff's over-water structure, which consisted of creosote-treated wood piles supporting a 2" x 4"-framed 1,818 sq. ft. warehouse clad in corrugated metal siding with an adjacent 450 sq. ft. deck (hereinafter the "Crab Shack").[1]

4. Seven piles under the Crab Shack and ten piles outside of the Crab Shack's footprint were broken during the allision.  As a result of the broken piles, the southwest corner of the Crab Shack was unsupported, creating an unstable cantilever over the Swinomish Channel.  The broken piles were integral parts of the Crab Shack.

5. In the early morning of July 18, 2006, defendant's president inspected damage resulting from the incident, and later in the morning defendant's representatives including Scott Robinson and marine surveyor Peter Mason arrived in La Conner to further review the damage and meet with individuals affected by the ISLAND STORM incident.  Later in the week, defendant's representative went beneath the Crab Shack by boat to survey the damage and estimate the number of damaged or missing piles.  See Ex. 551.  Defendants representatives also

---

[1] At trial, plaintiff objected to defendant's use of the term "Crab Shack" to identify plaintiff's structure claiming the description is pejorative.  However, as defendant correctly noted in its proposed findings, plaintiff itself referred to the structure as the Crab Shack.  See Ex. 9 ("Project Estimate [for] Demolition and Re-Construction of Crab Shack.") (emphasis added); Dkt. #35 at ¶3 ("The over-water structure is commonly referred to by plaintiff as the 'Crab Shack'").  Accordingly, for clarity in the record, the Court also hereinafter refers to plaintiff's structure as the Crab Shack.

MEMORANDUM OF DECISION

-2-

met with Mr. Jolley but did not go into the Crab Shack to survey any damage.

6. On Saturday, July 22, 2006, plaintiff e-mailed defendant's representatives with a $406,770 estimate to restore the Crab Shack to its pre-loss condition. The estimate provided for complete demolition of the Crab Shack and new replacement of the entire structure. See Exs. 8 & 9. The same day, plaintiff commenced the Crab Shack's demolition. Defendant did not receive meaningful notice of the demolition, however, until Monday, July 24, 2006, when defendant's representative Mr. Mason saw the Crab Shack's demolition.

7. Plaintiff contends that because the shore side of the Crab Shack encroached the Town of La Conner's right-of-way by a 1 ½ feet, the Crab Shack was a nonconforming use under the La Conner Municipal Code. As a result, plaintiff claims that the Crab Shack needed to be replaced rather than simply repaired. The Court, however, finds that plaintiff did not show that total replacement was necessary or that repairs were not possible. Neither the Town of La Conner, nor any other governmental agency, mandated that plaintiff demolish the Crab Shack rather than repair it. The testimony of John Doyle, the Town of La Conner's planning director, was ambiguous on the issue of repairing the Crab Shack. On the one hand, Mr. Doyle stated that he would have approved any mitigation measures to sustain the Crab Shack's structure through a letter of exemption. Plaintiff decided to use a letter of exemption to accomplish the demolition. On the other hand, Mr. Doyle also indicated on cross-examination that an engineering assessment and county approval would have been required to execute the repair option discussed below in Finding of Fact 13. While plaintiff never pursued a repair, based on a totality of the evidence, the Court finds that defendant's permitting expert, William Gerken, credibly testified that because plaintiff already had obtained permits to develop the Crab Shack, repair of the warehouse, as opposed to its replacement, was an option.

8. Plaintiff's expert, David Parsons, testified that the value of the Crab Shack had diminished by $407,000 as a result of the allision. The Court finds, however, that although Mr.

MEMORANDUM OF DECISION
-3-

Parsons characterized his analysis as a diminished value calculation, it was actually a cost-of-repair calculation because Mr. Parsons did nothing more than subtract from his $1.52 million valuation the $406,770 repair estimate provided to him by Mr. Jolley. As a result, Mr. Parsons's diminished value calculation was equivalent to the cost of repair provided by Mr. Jolley. Therefore, because Mr. Parson's opinion was entirely dependent on the accuracy of Mr. Jolley's repair estimate of $406,770 the Court gives little weight to Mr. Parsons's opinion.[2]

9. At trial, Mr. Parsons approached the witness stand with a file folder full of documents that had never been produced to defendant. Defendant had previously moved *in limine* to exclude Mr. Parsons's testimony, which the Court reserved ruling on until the time of trial. See Dkt. #27. Based on the failure to produce Mr. Parsons's documents, defendant renewed its motion to exclude Mr. Parsons's testimony. Defendant's interrogatory number eight and accompanying request for production number 51 required that plaintiff disclose all facts supporting its contention that the allision reduced the property's market value. See Ex. 541 at 36, 38. The Court finds that plaintiff failed to disclose the data and information Mr. Parsons considered in reaching his opinion that there were no properties comparable to the Crab Shack for valuation purposes. But, the Court finds that the failure to disclose this information was harmless because as discussed above, Mr. Parsons's diminished value calculation is inconsequential to the outcome of the case because the material part of his analysis was based exclusively on Mr. Jolley's July 22, 2006 repair estimate.

10. The Court finds that Mr. Jolley's $406,770 July 22, 2006 repair estimate is unreliable speculation. Plaintiff provided no back-up documents or testimony supporting the $406,770 repair estimate, which was produced just five days after the incident. The $406,770 is based on

---

[2] As discussed in Section III.C below, discounting the weight of Mr. Parsons's testimony is also appropriate given plaintiff's failure to produce the documents considered by Mr. Parsons in formulating his opinion.

MEMORANDUM OF DECISION
-4-

Mr. Jolley's *ipse dixit* alone.[3]

11.  The Court also finds that plaintiff did not document the extent of the damage in order to support its claim that complete demolition and replacement, as opposed to repair, was warranted.  Without notifying defendant, plaintiff *sua sponte* decided to initiate demolition of the Crab Shack during the weekend after the allision.  As a result, the amount of information available to defendant and the Court regarding the extent of the damage is limited.  The preservation of the Crab Shack, at least until a thorough structural investigation could be completed, is relevant to this case because litigation concerning the damage to the Crab Shack was foreseeable at the time of the demolition.  See Ex. 8 (Mr. Jolley's July 22, 2006 e-mail attaching the $406,770 estimate stating "This may be considered as a proposed full settlement") (cc'd to plaintiff's counsel)).  The Court, however, finds that the timing and destruction of the Crab Shack was not executed in bad faith.  The Court finds that the Crab Shack was demolished because of Mr. Jolley's concern for public safety and to further the development of the Moore-Clark project in La Conner.  Nevertheless, the Court weighs the timing of the Crab Shack's removal and lack of notice to defendant as a factor in determining the extent to which plaintiff proved its damages and the ability of defendant to contest the claimed damages.

12.  The Court finds that plaintiff intended to demolish the Crab Shack prior to the allision as part of its development plans for the Moore-Clarke project.  Simply because it was reasonable to demolish the Crab Shack to further development plans, however, does not mean that the demolition and complete replacement was a reasonable or necessary repair for the damage caused to the southeast corner of the Crab Shack by the ISLAND STORM.  As defendant's expert William Gunderson credibly testified, the Crab Shack could have been

---

[3] Although John Carlson testified that it cost approximately $218,000 to construct the new 100' long deck, this amount is not probative of the reasonable cost to repair the Crab Shack's damage. Compare Ex. 6, 534 (new construction), with Ex. 5, 529 (damaged Crab Shack).

MEMORANDUM OF DECISION

repaired. Based on the information available to defendant and presented to the Court, the Court finds that the repair solution proposed by defendant's engineering expert Mr. Gunderson is reasonable and appropriate.

13. Mr. Gunderson credibly testified that the Crab Shack could be repaired by driving steel piles outside the structure's footprint and connecting the piles diagonally with a steel beam to support the southeast corner of the Crab Shack where the piles had been broken. Although Mr. Gunderson initially testified that this $55,000 method of repair (Option 1) was temporary, on redirect Mr. Gunderson testified that this repair could be made permanent for a total of $75,000. See Ex. 513.

14. Defendant's repair estimate provided through Mr. Gunderson's testimony, however, did not include the repair/replacement costs for the ten piles that were damaged outside of the Crab Shack's footprint. At trial, John Carlson credibly testified that the cost steel piling is $1200/pile with an additional $700 to drive each pile. Based on these figures, the Court finds $19,000 a reasonable cost of repair for the ten piles that were damaged outside of the Crab Shack's footprint.[4]

15. In demolishing the entire warehouse, plaintiff also incurred actual costs of $19,224 to pull 40 piles and stubs for later disposal, resulting in a removal cost per pile of $480. See Ex. 516. Using this figure, the Court finds $8,160 as a reasonable cost to remove the 17 piles damaged in the allision.

//

//

---

[4] Although Mr. Jolley stated on direct examination that he was not claiming for the loss of the piling outside of the Crab Shack's footprint, his repair estimate, which includes the extraction, purchase, and driving of 40 piles, exceeds the amount awarded here by the Court. Therefore, the Court finds that plaintiff did not waive a claim for recovery of these ten damaged piles.

MEMORANDUM OF DECISION

-6-

### III.  CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and has subject matter jurisdiction under its admiralty and maritime jurisdiction, since the July 17, 2006 incident occurred in the navigable waters of the United States.

2. Negligence principles of general maritime law are controlling in this case. When a moving vessel collides with a stationary object, the moving vessel is presumed to be at fault. The Oregon, 158 U.S. 186, 192-93 (1895).  Defendant has stipulated liability under the general maritime law, therefore the only remaining issue is the appropriate award of damages.  See Dkt. #33 at 6; #35 at 8.

**A.    Cost of repair damages**

3. "The basic principle applied by courts in admiralty cases in ascertaining damages, *restitutio in integrum*, requires that the injured party should be fully compensated for the loss sustained.  Damages are measured by the diminution in value of the property, that is, the difference between the value of the vessel before and after the collision.  Where the destruction of property has not been total and repairs are possible, the costs of repairs may be used as evidence of the diminution in value." Stevens v. F/V Bonnie Doon, 731 F.2d 1433, 1436 (9th Cir. 1984) (internal citations and quotation marks omitted).  However, "damages which are uncertain, contingent, or speculative cannot be recovered[.]"  Cal. Navigation & Improvement Co. v. Union Trans. Co., 176 F. 533, 535 (9th Cir. 1910).  Admiralty law allows an award for the reasonable cost of repairs even if the damage is not repaired.  See United States v. Shipowners & Merchants Tugboat Co. v. United States, 103 F. Supp. 152, 153 (N.D. Cal. 1952), aff'd, 205 F.2d 352 (9th Cir. 1953) ("It is elementary that a wrongdoer in a collision is liable for the damages to the vessel as they exist at the moment of their creation."), cert. denied, 346 U.S. 829 (1953).

4. Based on this authority, and the findings set forth above, the Court concludes that

$8,160 for removal of the damaged piles, $75,000 for repair of the southwest corner of the Crab Shack, and $19,000 for repair of the ten broken piles outside of the Crab Shack's footprint will fully compensate plaintiff for the loss caused by the July 16, 2006 allision.

5. The Ninth Circuit has recognized that "depreciation should be allowed for damage to a non-integral part of a structure 'where the damaged part was scheduled for early replacement, long before the expiration of the useful life of the whole.' There is no deduction for depreciation, however, when 'the repair or replacement adds nothing of substance to the overall value of the structure of which it is an integral part.'" Weyerhaeuser Co. v. Atropos Island, 777 F.2d 1344, 1352 (9th Cir. 1985) (internal citation omitted) (quoting Oregon v. Tug Go-Getter, 468 F.2d 1270, 1274 (9th Cir. 1972)). Based on the Court's finding above that the damaged piling was integral part of the Crab Shack, the Court does not depreciate the cost of repairing the Crab Shack as set forth above.

**B.    Prejudgment Interest**

6. "In admiralty, prejudgment interest must be granted unless peculiar circumstances justify its denial." Dillingham Shipyard v. Associated Insulation Co., Ltd., 649 F.2d 1322, 1328 (9th Cir. 1981). The district court has "discretion to award prejudgment interest to accomplish the just restitution of injured parties" and "also has broad discretion to determine when prejudgment interest commences and what rate of interest to apply." Columbia Brick Works, Inc. v. Royal Ins. Co. of Am., 768 F.2d 1066, 1068 (9th Cir. 1985). Normally, the interest rate prescribed for post-judgment interest in 28 U.S.C. § 1961(a) is applied unless the equities of the case demand a different rate. See W. Pac. Fisheries, Inc. v. SS President Grant, 730 F.2d 1280, 1289 (9th Cir. 1984). In this case, the Court concludes that prejudgment interest shall be applied under 28 U.S.C. § 1961 at the federal statutory rate of 2.14% from the date of the July 17, 2006 allision until the date of this Memorandum of Decision.

**C. Plaintiff's discovery violation and alleged spoliation through demolition of the Crab Shack**

7. Under Fed. R. Civ. P. 26(a)(2)(B), a testifying expert witness must produce a report including: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the data or other information <u>considered by the witness</u> in forming them; [and] (iii) any exhibits that will be used to summarize or support them." (Emphasis added). When a party fails to disclose or supplement its discovery responses in accordance with Rule 26(a) and (e), Rule 37(c) provides the remedy:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), <u>the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless</u>. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

<u>Id.</u> at Rule 37(c)(1) (emphasis added). The Ninth Circuit "give[s] particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." <u>Yeti by Molly Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(c)(1)'s exclusionary sanction has been characterized by the Ninth Circuit and the advisory committee notes as "automatic" and "self-excuting." <u>Id.</u> ("The Advisory Committee Notes describe it [Rule 37(c)(1)] as a 'self-executing,' 'automatic' sanction to 'provide[] a strong inducement for disclosure of material.'") (alteration in original). However, "[t]wo express exceptions ameliorate the harshness of Rule 37(c)(1): The information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless." <u>Id.</u> Based on the Court's finding that plaintiff's expert Mr. Parsons failed to disclose in his report the data or other information he considered in forming his opinion, and plaintiff failed to supplement its responses to defendant's interrogatory number 8 and request for production number 51, the Court concludes that plaintiff violated Fed. R. Civ. P. 37(c)(1). Given the Court's finding above

MEMORANDUM OF DECISION

that the violation was harmless, Mr. Parsons was allowed to testify at trial.  However, the Court concludes that a sanction against plaintiff's counsel for this violation in the amount of $100 is warranted under Rule 37(c)(1) and Local General Rule 3(d).

8.  Defendant raised a spoliation defense in its answer and again at trial because of the timing and lack of notice of the Crab Shack's demolition.  See Dkt. #6 at 2 (Affirmative defenses).  "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonable foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).  When spoliation occurs, federal trial courts have "the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence."  Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993).  "This power includes the power to sanction the responsible party by instructing the jury that it may infer that the spoiled or destroyed evidence would have been unfavorable to the responsible party."  Med. Lab. Mgmt. Consultants v. Am. Broadcasting Cos., Inc., 306 F.3d 806, 824 (9th Cir. 2002).  Notice of "potential relevance to the litigation" is sufficient for a Court to draw an adverse inference from spoliated evidence. Glover, 6 F.3d at 1329.  But, "[w]hen relevant evidence is lost accidentally or for an innocent reason, an adverse evidentiary inference from the loss may be rejected."  Med. Lab. Mgmt. Consultants, 306 F.3d at 824.  As the Court found above, the Crab Shack was demolished for an innocent reason.  Therefore, the Court does not apply an adverse evidentiary inference, but rather simply weighs the early destruction of the Crab Shack in the totality of the circumstances in assessing the extent to which plaintiff proved its damages and impacted defendant's ability to defend against plaintiff's claim.

## IV.  CONCLUSION

Based on the findings recited above and the Court's conclusions of law, the Court finds in favor of plaintiff and awards damages as follows:

| Cost of repair: | |
|---|---|
| Remove 17 damaged piles: | $ 8,160 |
| Repair Crab Shack's southwest corner: | $ 75,000 |
| Repair ten damaged piles: | $ 19,000 |
| Pre-judgment interest: | $ 14,536 |
| **TOTAL:** | **$ 116,696** |

The Clerk of Court is directed to enter judgment accordingly. For the reasons set forth above, the Court also sanctions plaintiff's counsel in the amount of $100, payable to the Clerk of Court (Sanctions), for discovery violations.

DATED this 16th day of June, 2008.

*MMT S Lasnik*
Robert S. Lasnik
United States District Judge